## IN THE MATTER OF THE APPLICATION OF LAU SAM, for a writ of habeas corpus.

### DECIDED: AUGUST 21, 1900.

1. A hearing will be had upon an application for a writ of habeas corpus by a Chinese held for deportation under a decision adverse to his landing rendered by the proper immigration officers, where the hearing is claimed upon the ground that petitioner is an American citizen by reason of his birth in the Hawaiian Islands, and entitled as such American citizen to return to the Islands after a temporary sojourn in China.
2. Evidence, consisting only of the hearsay testimony of Chinese persons, and there being no white witnesses, considered inadequate to satisfy the Court of the truth of the allegations of petitioner as to birth in the Hawaiian Islands.

CHINESE EXCLUSION LAW.   HABEAS CORPUS.

*F. M. Brooks* and *F. J. Berry*, for petitioner.
*John C. Baird*, U. S. District Attorney, for respondent.

ESTEE, J.   This is an application by one Lau Sam, a Chinese person, for a writ of Habeas Corpus.

The Writ was issued by this Court directed to one Joshua K. Brown, United States Immigration Officer for the Territory of Hawaii, as prayed for; the petition alleging that said petitioner was illegally restrained of his liberty by said Brown as such U. S. Immigration Officer. Upon the coming in of the return, which was made and verified by E. R. Stackable, the Collector of Customs of the Port of Honolulu, it appeared that the petitioner had been and was then in the custody of said E. R. Stackable as such Collector of Customs, the said Joshua K. Brown being simply his assistant.

Thereupon in open Court on motion of John C. Baird, United States District Attorney for the District of Hawaii, on behalf of said E. R. Stackable as such Collector of Customs, said Joshua K. Brown being then present in Court and consenting, and Messrs. F. M. Brooks and F. J. Berry, counsel for the petitioner being also present and consenting, and the petitioner having been produced and being then present, it was ordered that said E. R. Stackable, Collector of Customs as aforesaid, be substituted as respondent in said matter in the place and stead of said Joshua K. Brown.

In his sworn return to said writ, the said E. R. Stackable alleges the detention of the petitioner in his custody as a native and citizen of China and an alien and a laborer, the embarkment of the said petitioner as a steerage passenger at China, on the steam vessel "Coptic," his arrival at the port of Honolulu, Territory of Hawaii, and his attempt to enter said Territory.

That said E. R. Stackable as such Collector of Customs for the Port of Honolulu, examined the said petitioner as to his right to land in the Territory of the United States and become a resident thereof, and after inquiring into the same, held that said Lau Sam was an alien laborer and not entitled to land in the United States Territory or become a resident thereof; and further determined and ordered that said Lau Sam be deported and carried back to China to the port from whence he sailed at the expense of the steamship company which had conveyed him to the port of Honolulu.

That thereafter on August 1st, 1900, the said Lau Sam appealed in writing from such decision of the Collector of Customs, to the "Honorable Commissioner General of Immigration of the United States of America," which appeal is in the words and figures following:

"Honolulu, Territory of Hawaii, August 1, 1900.
"Mr. E. R. Stackable,
   "Collector of Customs for the Port of Honolulu, Territory
      of Hawaii, and Mr. Joshua K. Brown, U. S. Inspector
      of Chinese.

"Sirs:

"The undersigned, an Hawaiian born citizen, who arrived at the port of Honolulu, from China, on the 30th day of June, 1900, hereby appeals from the decision made by you and each of you refusing to allow him to land in the Territory of Hawaii, to the 'Honorable Commissioner General of Immigration of the United States of America.'

This appeal is taken on the ground that the undersigned having been born in the Hawaiian Islands, pursuant to permission given under the law of the United States of America, that Chinese persons born in the Hawaiian Islands or United States Territory, and being duly qualified and entitled to enter said Hawaiian Islands, after a temporary absence in China, he should not have been denied permission to land.

"Respectfully,

"LAU SAM.
"By his attorney,
"F. M. BROOKS."

That thereafter the ocean steamer "Coptic" upon which the said Lau Sam had arrived at the port of Honolulu, departed from said port, leaving the said Lau Sam in the custody of the said Collector of Customs pending his said appeal. That on the first day of August, 1900, the said Lau Sam withdrew his said appeal, the said withdrawal being in the words and figures following, to wit:

"Honolulu, August 1st, 1900.

"Mr. Brown.

"The friends of Lau Sam, No. 92 Coptic, Lau Yuen, No. 42 Coptic, ask that their appeal be withdrawn if it is not too late. They think that the time and expense will be too great.

"Yours, etc.,

"F. M. BROOKS,
"Attorney for Lau Sam, Lau Yuen.

"Received at 9:30 a. m., August 2, 1900, too late to get these people from quarantine station before sailing of S. S. Coptic, 10 a. m.

"JOSHUA K. BROWN,
"Chinese Inspector."

The return of said Collector of Customs further alleges the detention of the said Lau Sam under the Statues of the United States in such cases made and provided, and alleges that the decision of the Collector is final and conclusive in the absence of an appeal to the Honorable Secretary of the Treasury of the United States.

Upon the hearing before the Court, the petitioner introduced testimony tending to show that he was one of the four sons of Lau Kam Choy, a Chinese merchant or planter formerly residing or doing business at Palama, a portion of the city of Honolulu, and of Yeong Shee, his wife. And it was claimed that the petitioner was born during the sixth year of the reign of the Chinese Emperor, Kwong Su, according to the Chinese method of computing time, which so far as can be gathered from the testimony, would be about the year 1880. That Lau Kam Choy, the father, with his family including the petitioner who was then about four years of age, left the Hawaiian Islands for China, where he has since continuously resided, a period of between sixteen and seventeen years.

Four Chinese witnesses testified that petitioner was the son of Lau Kam Choy, born at Palama. One of these witnesses, Lau Duck, who claims to be the uncle of petitioner, testified that the petitioner is the same person, known as Lau Sam, who was the son of Lau Kam Choy, and who was born at Palama over twenty years ago, and who left these Islands in company with his father and other members of the family, over sixteen years ago. Lau Duck, the uncle, was not present in these Islands at the time of the birth of Lau Sam, and had not seen him from the time he left here over sixteen years ago, until about four years ago, when he, Lau Duck, went back to China, where he claims to have seen the petitioner and been

introduced to him as Lau Sam. Lau Duck testified that he remained in China about two years and saw the petitioner frequently during that time, and then returned to the Islands of Hawaii about two years ago. He next saw the petitioner shortly after, he arrived at Honolulu, a few weeks ago. He testified that he knew Lau Sam was coming back to these Islands because Lau Kam Choy, the father of Lau Sam, had written to him advising him that he was about to sail for Honolulu and requested him to get a permit for him to land.

The petitioner, Lau Sam, remembers nothing of his residence on the Islands, and testified that he knew he was born here because his father had told him so; and the other witnesses, one of whom had been associated with his father in business, testified that the petitioner Lau Sam was born here; that they knew this because Lau Duck, the uncle, had told them so. All the material facts are sustained only by Chinese and mainly hearsay, testimony. There are no white witnesses to establish any of the alleged facts.

To my mind the evidence is wholly insufficient to establish the identity of the petitioner with the Lau Sam claimed to have been born here some twenty years ago as the child of Lau Kam Choy and Yeong Shee, his wife, or that Lau Sam was born here. Similar questions involved in this inquiry have been considered by other United States Courts. For instance, the facts in the case of *In re Louie You* decided by the United States District Court for the District of Oregon, on the 14th of September, 1899, and reported in 97 Fed. Rep. 580, are very similar to those involved here. In that case the court said:

"The petitioner claims that he went away with his father sixteen years ago, when he was three years of age. Three Chinese witnesses testified that he was the son of Louie Park, born here. One of these is his brother, another is his father's former partner, and a third is the Chinese doctor who claims to have been present at the birth of the petitioner. It may be that the petitioner is the son of Louie Park. I have no means of satisfying myself that he is what he claims to be, unless I accept unreservedly the uncorroborated testimony of these Chinese

witnesses, and this I am not willing to do. I am not willing to establish the precedent of admitting Chinese persons, who have admittedly remained out of the country for so great a length of time, unless some white witness, or some fact not depending upon Chinese testimony corroborates the testimony of the Chinese witnesses relied upon to establish the identity of the person who seeks a landing. Those who leave the country when infants, must not expect to gain ready readmission after they have in effect reached maturity. If satisfactory proof of their right to land is not possible in such a case, the fault is theirs. The difficulty is one easily foreseen."

See also, *Lee Sing Far v. U. S.*, 94 Fed. Rep. 834, and cases there cited.

*Gee Fook Sing v. U. S.*, 49 Fed. Rep. 146.

As was said by the Supreme Court of the United States in the case of *Quock Ting v. U. S.*, 140 U. S. 417, 420:

"Undoubtedly as a general rule, positive testimony as to a particular fact uncontradicted by any one, should control the decision of the Court, but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the Court or jury to disregard his evidence even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions of his own conduct as to discredit his whole story. His manner too, of testifying, may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there is no adverse verbal testimony adduced."

In the case at bar, I am convinced, after a careful consideration of all the testimony adduced, that the statements of the petitioner and the witnesses produced in his behalf, are so highly improbable that their testimony is unworthy of belief, and I hereby remand the petitioner.